**Lige HUGHES, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–74–677.**

Court of Criminal Appeals of Oklahoma.

Jan. 8, 1975.

Quinton R. Tipton, Carnegie, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Patrick Kernan, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Lige Hughes, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Caddo County, Case No. CRF–74–31, for the offense of Assault and Battery with a Dangerous Weapon, After Former Conviction of a Felony, in violation of 21 O.S. § 645. His punishment was fixed at a term of five (5) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, the first witness, Jimmie Strong, testified that he was with the complaining witness, Dennis Smith, on March 1, 1974, at the Hinton Recreation Center and they subsequently went to the home of Robert Pearcy and his wife, which was also in Hinton. The defendant was present in the Pearcy home when Strong and Smith arrived. The victim, Smith, then directed verbal obscenities toward Mrs. Pearcy which angered her, her husband, and the other witnesses in the home. After a thirty-minute attempt to quiet Smith by argument, the defendant talked to Smith about going outside. Strong further testified that the two did then go outside without fighting in the house, while Strong remained in the house. Strong did not see any physical contact between the two until they reached the street. He then saw the defendant hit Smith several times in the chest while the defendant was on top of Smith. Smith never hit the defendant. Strong then "went out there and stopped it" by grabbing the defendant's shoulder and helping Smith back to the house. At this point he observed blood on Smith's hand, but not elsewhere on his person. Smith then went to the bathroom in the Pearcy home to clean up. Strong went to check on him and saw that Smith had left.

Steve Wickware, who was present at the time of the incident, testified next. Wickware's testimony was substantially the same as the first witness', except that he did not observe the fight and noted that there was blood on the left side of Smith's head when he returned to the house. Wickware stated he saw no weapons of any kind that night.

Robert Pearcy, the following witness, testified that the defendant was staying at the Pearcy home on March 1, 1974. The complaining witness came to the house with Strong, using bad language directed at Pearcy's wife. Pearcy told Smith that he would have to leave. The defendant then told him that he would have to go outside. Smith left the house and the defendant followed. After an argument in the yard, Smith ran from the defendant. The defendant pursued him and overtook him. Pearcy then testified that the defendant struck Smith on the left side of the head, but Smith never struck the defendant. Pearcy testified the Smith's forehead was bleeding and the defendant had a deep cut in his finger. After the fight, Pearcy saw the defendant leave the house and proceed down the alley toward the cotton gin.

Doctor Ralph Butler testified that he examined and treated Smith in the Weatherford hospital on March 2, 1974. He found Smith to be suffering from a puncture wound in the left side of the chest and a stab wound in the left side of the skull. He observed a metal object lodged in the wound in the skull. The wounds were stated to be "life threatening."

Doctor Robert Goodman testified that on March 13, 1974, he removed the metal object, which he described as a "blade", from Smith's head and gave the object to a pathologist, Doctor Honiker.

Tom Hughes, a resident of the neighborhood around the Pearcy home in Hinton, stated that at approximately 9:00 p. m. on March 1, 1974, he heard footsteps on his front porch. Upon inquiry, he found Smith seated on the porch with blood on his hair, neck and shirt. Hughes notified the Hinton Police Department. The police came to the house and picked up Smith.

Officer Joe Morgan, of the Hinton police force, testified that he went to the Hughes' home on March 1, 1974, and picked up Smith. Morgan then took Smith to his parents' home for care and treatment. While at the home, the stab wounds were discovered and Smith was then taken to the hospital in Weatherford.

After placing Smith in the care of his parents, Officer Morgan began his investigation of the incident by joining with the senior officer on the police force and going first to the home of Robert Pearcy and then to a trailer house located by the cotton gin. In the early morning hours of March 2, 1974, the officers approached the trailer house; Tucker went to the back door and Morgan to the front. Mario Ramirez answered the officer's knock. Morgan asked him if he knew the defendant to which Ramirez answered "yes". Morgan than asked him if he knew where the defendant was. Ramirez answered "yes" again, turned around and pointed to the defendant who was seated on the couch inside the trailer. The officers took the defendant out of the trailer, placed him under arrest, made a weapons search and after advising him of his rights, took him to the City jail in Hinton.

Dearl Tucker, the senior police officer, also testified to the facts leading to the defendant's arrest on March 2, 1974. His testimony was substantially the same as Officer Morgan's, except that he stated the trailer house was occupied by two Mexican men. One was Mario Ramirez. The other's name was not known to Tucker; however, he stated that the defendant did not live in the trailer. Tucker further testified that on March 4, 1974, he received a call from a friend of Ramirez (Ramirez's English was poor) who told him that Ramirez had found a knife in the trailer. Tucker went to the trailer house at Ramirez's request to get it. At the trailer house, Ramirez pointed to the knife and Tucker took it. He described the knife as being bloodstained with the point broken off the blade. He left the trailer house, returned to his office, put the knife in an envelope and locked it in the safe.

Lee Entz then testified that he owned the trailer house and various appliances in it. He stated that the occupants, Ramirez and Alais, paid no rent or utilities but en-

joyed the occupancy while working at the gin, and that the defendant did not reside there, nor did he have any proprietory interest in it. Entz entered the trailer "every morning to get these boys to go to work" and at other times to make sure it was kept clean.

The complaining witness, Dennis Smith, then testified. He stated that on March 1, 1974, he went with Jimmie Strong to the Pearcy home; that after using abusive language directed at Mrs. Pearcy, he got into an altercation with the defendant. The defendant told him, "Come on, let's go outside" and Smith started out the door. On the porch, the defendant stabbed him in the side once more and Smith fled. The defendant caught him and stabbed Smith in the head. Smith testified that he never struck the defendant. After the fight was broken up, Smith was in a dazed condition. Two people helped him into the house and put him into the bath tub. Smith then left the house by the back door and hid behind a tree. From there, he walked to Hughes' porch, where he was found and taken to his parents' house and later to the hospital.

Ray Lambrecht, of the Oklahoma State Bureau of Investigation, was called to testify for the state. Mr. Lambrecht stated that he obtained the "blade" of the knife from Doctor Honiker, a pathologist, and that the "blade" point removed from Smith's skull constituted the missing part of the instrument turned over to the authorities by the trailer occupant. Lambrecht based his opinion on the matching contours of the knife blade and broken point.

The defendant did not testify nor did he offer evidence in his own behalf at the trial.

■ The defendant alleges as error the trial court's admission into evidence State Exhibits Nos. 2, 3, and 7, i. e., a pair of trousers, a shirt, and a photograph of a knife and blade. After a careful search of the record, we find that the State's Exhibits Nos. 2 and 3 were never admitted into evidence. The defendant's contention regarding these items is wholly without merit. Further, the photograph of the knife and blade were admitted into evidence without objection on the part of the defendant, (Tr. 116).

■ The defendant next alleges that the knife's seizure was the result of an illegal search and seizure. We cannot agree. Mario Ramirez, an occupant of the trailer house, requested that the Hinton police take possession of the knife which he found in the trailer. Clearly, there was no illegal act performed by the officials involved in obtaining the knife. See Smith v. State, Okl.Cr., 519 P.2d 1370, where a search of the defendant's wife's aunt's house and the seizure of items allegedly taken in a robbery was lawfully conducted with the aunt's consent.

■ We find no merit in the defendant's contention that the state did not show that the evidence presented at trial belonged to the defendant. The defendant's possession of the knife was clearly established by sufficient and competent evidence of the expert witness from the OSBI, who testified that the knife's blade point, removed from the victim's skull, was perfectly contoured to the broken instrument found in the trailer where the defendant was arrested.

■ The final contention of the defendant is that the evidence is insufficient to sustain the conviction. It is our opinion that the state presented evidence sufficient for the jury to convict the defendant as charged. Testimony of the several eye witnesses is in agreement concerning the facts that: (1) a fight took place between the victim and the defendant; (2) the victim was never seen to strike the defendant; and (3) the victim sustained injuries at the hand of the defendant. Medical testimony overwhelmingly established the nature of the injuries to be that of a puncture wound to the chest, and a stab wound to the skull. The treating physician testi-

fied that the life of the victim was threatened by the injuries.

For all the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BLISS, P. J., concurs.

BRETT, J., concurs in results.